| | |
|---|---|
| RALPH BOOKER, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) No. 06 C 1184 |
| CHARLES C. MYLER, not individually but solely as Trustee, | ) |
| | ) |
| | ) |
| Appellee. | ) |
| | ) |

**MEMORANDUM ORDER AND OPINION**

MARVIN E. ASPEN, District Judge:

This case is before us on appeal from a final judgment of the United States Bankruptcy Court

for the Northern District of Illinois. Appellant Ralph Booker challenges the Bankruptcy Court's

grant of summary judgment in favor of Charles C. Myler, trustee for the Chapter 7 estate ("Trustee")

of Anthony Fields ("Debtor"). In the underlying adversary proceeding, Booker alleged that Debtor

fraudulently induced him to convey a parcel of real property, entitling Booker to rescind the

transaction and reclaim the deed for the land. The Bankruptcy Court held for Trustee, concluding

that Booker's rescission action was untimely and barred by laches. For the

reasons set forth below, we affirm the decision of the Bankruptcy Court.

I.      **SUMMARY OF THE FACTS**

The essential facts of this case are largely undisputed.[1] In June 1999, Booker arranged for

execution of a trustee's deed from Cosmopolitan Bank and Trust to convey certain property located

on East Oakwood Boulevard in Chicago, Illinois to Debtor. (*See also* Booker Initial Br. at 3.)

---

[1]Unless noted otherwise, we derive the facts for our review from the parties' statements, submitted to the Bankruptcy Court pursuant to its Local Rules 7056-1 and 7056-2, and supporting evidentiary material.

Several months later, in November 1999, Booker and Debtor entered into an oral agreement for payment of that property. Debtor promised to give Booker the following as consideration for the property: (a) $1,000,000 cash, with $100,000 due on June 15, 2000 and the remaining $900,000 payable within 60 days; (b) certificates representing 5% of the equity of Lakeview Real Estate Development Corporation, also due by June 15, 2000; and (c) additional cash payments of $100,000 per year for ten years, to begin upon completion of construction intended for the property. The value of this consideration totaled $2.8 million.

Debtor, however, "never paid Booker any of the purchase price." (*Id.* at 3.) On June 15, 2000, Debtor tendered a $100,000 check to Booker as "partial payment." On June 27, the check was returned for insufficient funds. Nearly three years later, on February 16, 2003, Debtor issued another check to Booker in the amount of $200,000, for a "deposit on 916 Oakwood." This check was also "Returned Not Paid Because NSF." After learning of the second bounced check, Booker filed a lawsuit in Illinois state court on July 24, 2003, seeking an equitable title rescission and return of the property based on Debtor's alleged fraud.

On May 23, 2003, Debtor filed a Chapter 11 petition, which was subsequently converted to a Chapter 7 proceeding. Trustee brought an adversary proceeding on February 5, 2004 to determine the validity of Booker's interest, along with the interests of other parties asserting liens on the property. Booker filed a counterclaim in early 2005. Trustee filed the motion for summary judgment on September 14, 2005, and the Bankruptcy Court granted that motion on January 11, 2006.

II.     **STANDARD OF REVIEW**

A Bankruptcy Court's grant of summary judgment is reviewed *de novo* by a district court. *United Air Lines, Inc. v. HSBC Bank USA*, 322 B.R. 347, 350 (N.D. Ill. 2005); *see Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003); *Outboard Marine Corp. v. Moglia*, 278 B.R. 778, 782 (N.D. Ill. 2002). Thus, we must make an independent examination of the Bankruptcy Court's judgment without giving deference to that court's analysis or conclusions. *Eden v. Robert A.*

*Chapski, Ltd.*, No. 03 CV 116, 03 CV 00116, at *2 (N.D. Ill. May 14, 2003). We also review *de novo* mixed questions of fact and law. *See In re Rovell*, 232 B.R. 381, 386 (N.D. Ill. 1998). Factual findings are reviewed for clear error. *Hoseman*, 322 F.3d at 473; *United Air Lines, Inc.,* 322 B.R. at 350.

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c); *see* Fed. R. Bankr. P. 7056 (applying Fed. R. Civ. P. 56 to adversary proceedings). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (quotation marks omitted). Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

III.     **ANALYSIS**

    *A.*     *Timing of Summary Judgment Decision*

Before substantively addressing the summary judgment arguments, we consider several related procedural issues. First, Booker seeks reversal of the Bankruptcy Court's order as premature because it "did not allow [him] any meaningful opportunity for discovery." (Booker Initial Br. at 9; *see* Booker Reply at 8-9; Booker Mem. Opp. Mot. for Summ. J. at 5.) The court, for example, "did not set any discovery cut-off deadlines." (Booker Reply at 8.) In addition, as soon as Booker completed several "procedural actions" – including filing a counterclaim, answering pleadings and

substituting counsel – the Trustee filed his motion "to unilaterally rob Booker of his right to conduct discovery." (*Id*. at 8-9.)

Booker's reliance on *Howard v. City of Chicago* in support of this argument is misplaced, as the court there decided a motion to dismiss rather than a motion for summary judgment. No. 03 C 8481, 2004 WL 239781, at *14 (N.D. Ill. Oct. 25, 2004). Nonetheless, he emphasizes that "under the notice pleading system, plaintiffs have a right to reach the discovery stage unless it is clear beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (Booker Reply at 9.) Booker's problem is not that he was prevented from reaching the discovery stage; indeed, he does not allege that Trustee refused to conduct an initial Rule 26 conference[2] or to respond to discovery requests. Booker's problem is apparently that he neglected to *initiate* discovery during the 18-month period the adversary proceeding languished before the Trustee's motion.

Booker offers no reasonable excuse for this failure to engage in discovery. He does not allege, for example, that the Bankruptcy Court or other parties obstructed discovery in some manner. The Bankruptcy Court was not obliged to "jump start" the parties' discovery by imposing discovery deadlines.[3] Rather, Booker – like any party – was responsible for conducting discovery as necessary to pursue his defense and counterclaim. He suggests that filing basic pleadings and substituting counsel occupied his time, precluding him from engaging in discovery. (Booker Reply at 8-9.) Booker does not sufficiently explain, nor can we comprehend, how (1) answering a few complaints; (2) filing a counterclaim nearly identical to his earlier state court complaint; and (3) substituting counsel, so overwhelmed him for 18 months that he was unable to conduct any discovery.

More importantly, if Booker felt that he could not adequately respond to Trustee's motion

---

[2]Federal Rule of Civil Procedure 26 also governs discovery in bankruptcy adversary proceedings. Fed. R. Bankr. P. 7026.

[3]Nor was Trustee obligated to initiate discovery if he did not deem it necessary to his claims. Although Trustee certainly would be expected to participate in discovery sought by Booker, per the federal rules, he was not required to seek his own discovery except as warranted to file pleadings in good faith.

due to incomplete discovery, he should have filed a Rule 56(f) affidavit. Fed. R. Civ. P. 56(f). "If

a party cannot present 'facts essential to justify [his] opposition,' Rule 56(f) requires that it explain

why" by affidavit. *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1002 (7th Cir. 1994) (quoting Fed.

R. Civ. P. 56(f)); *see In re Envirodyne Indus., Inc.*, 214 B.R. 338, 347 (N.D. Ill. 1997) (if appellants

were unable "to file appropriate documents to withstand summary judgment," they should have filed

a Rule 56 affidavit and requested more time). A party seeking relief under Rule 56(f) must

demonstrate "that additional relevant evidence exists" by relying on "specific assertions which could

produce a genuine issue of material fact, not mere speculation." *Theotokatos v. Sara Lee Personal

Prods.*, 971 F. Supp. 332, 343 (N.D. Ill. 1997); *see U.S. v. On Leong Chinese Merchs. Ass'n Bldg.*.

918 F.2d 1289, 1294-1295 (7th Cir. 1990). The non-movant "must also show that he or she has not

been dilatory in pursuing discovery." *Theotokatos*, 971 F. Supp. at 343. Courts consider the

following factors when assessing whether the non-movant has been dilatory: (1) duration of the case

prior to the 56(f) request; (2) whether the party "could have anticipated its need" for the discovery;

(3) the party's previous efforts to obtain the information; (4) the extent of discovery undertaken; (5)

any discovery limitations imposed by the court; (6) "prior solicitations of or provisions for discovery

by the trial court;" (7) any warning to the non-movant that "absent a speedier request," the court

might deny discovery and dismiss the case; and (8) "whether the information was inaccessible to

plaintiff." *Id.* (quoting *Paul Kadair, Inc. v. Sony Corp.*, 694 F.2d 1017, 1031 (5th Cir. 1983)); *see

also Med. Billing Consultants, Inc. v. Intelligent Med. Objects, Inc.*, No. 01 C 9148, 2003 WL

685444, at *1 (N.D. Ill. Feb. 27, 2003). Failure to comply with Rule 56(f) justifies the denial of

additional discovery. *Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000).

Even if we disregarded Booker's failure to submit a Rule 56(f) affidavit and relied on his

briefs,[4] we would reject his request for additional discovery. Keeping in mind the factors described

---

[4]A court may ignore a failure to comply with Rule 56(f) if, for example, a "sufficiently detailed request for discovery" appears in the party's opposition to a summary judgment motion. *Theotokatos*, 971 F. Supp. at 344. As Booker's opposition to Trustee's motion includes only a brief, generic paragraph raising this issue, we understand why the Bankruptcy Court may have been unwilling to overlook his non-compliance. (Booker Mem. Opp. Mot. for Summ. J. at 5.)

by the *Theotokatos* court, Booker was dilatory in pursuing discovery. As discussed above, this case lay dormant for well over a year with no discovery activity. Moreover, the discovery Booker claims is essential to avoid summary judgment appears to be within *his* possession. (*See* Booker Initial Br. at 10; Booker Reply at 9.) Booker, for example, should know the details of his alleged fiduciary relationship with Debtor. And presumably no one could know better than Booker when he was alerted to Debtor's fraudulent activity. It is unclear why Booker did not submit an affidavit or other evidence raising these issues.[5] Regardless, Booker has not identified what discovery he could hope to obtain from others that would raise genuine issues of material fact. We agree with the Bankruptcy Court and conclude that the summary judgment motion was not premature.

### B. Trustee's Failure to Comply with Rule 7056-1

Booker next alleges that the Bankruptcy Court should have denied the summary judgment motion because Trustee violated bankruptcy Local Rule 7056-1. Booker argues that Trustee did not: (1) include facts describing the parties, venue or jurisdiction; or (2) cite to any affidavits or other evidence in support of his facts. (Booker Mem. Opp. Mot. for Summ. J. at 5; Booker Initial Br. at 13.) Trustee responds that he did not need to cite additional evidence because his motion relied entirely on Booker's pleadings and admissions. (Trustee Reply Supp. Mot. for Summ. J. at 2.) The Bankruptcy Court sided with Trustee, finding that the parties, venue and jurisdiction were sufficiently set forth in other pleadings. The judge also observed that Rule 56 did not require Trustee to submit affidavits.

As Booker observes, the Seventh Circuit has repeatedly held that trial courts, in their discretion, may demand strict compliance with local rules governing summary judgment procedures. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). On the other hand,

---

[5]Although Booker claims the affidavit of Stacey Atkins "strongly supports the fact that Booker first learned of the fraud after April 11, 2003," it does not. Atkins states that Booker hired her firm to represent him in the state court action against Debtor, which she filed on his behalf on July 24, 2003. (Atkins Aff. ¶¶ 3-5, attached to Booker Mem. Opp. Mot. for Summ. J.) While she testifies that she "worked closely with Booker in investigating the events leading up to and following the entry of the [November 1999 oral agreement]," the affidavit sheds no light on when Booker suspected Debtor's alleged fraud or hired Atkins to investigate.

courts retain the same discretion to forgive relatively minor insufficiencies, particularly where – as here – they do not hinder the court or the opposing party. Nonetheless, we find that Trustee did include some facts describing the parties, venue and jurisdiction, all of which are admitted by Booker. (Trustee St. of Facts ¶¶ 1-3, 9, 14; Booker Resp. to Trustee St. of Facts ¶¶ 1-3, 9, 14.) Thus, there is (and was) no need to strike the motion based on Trustee's alleged omissions.

Regarding Booker's claim that Trustee failed to cite any evidence supporting the statement of facts, we again reach the same conclusion as the Bankruptcy Court. Though Trustee should have cited to Booker's pleadings or other admissions to identify his sources, it was not improper to rely on these materials in lieu of presenting his own evidence. *See, e.g., Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145, 1153 (7th Cir. 1989) (holding that plaintiff did not err by seeking summary judgment based on allegations in counterclaim alone). Rule 56 clearly provides that a party may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b); *see also* Fed. R. Civ. P. 56(c) (judgment to be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact"). The parties agree that because Trustee lacks personal knowledge of the disputed transaction, he could not submit his own affidavit. Instead, Trustee concedes to Booker's version of the facts[6] and seeks summary judgment as a matter of law. *See Zayre Corp.*, 882 F.2d at 1153 (observing similarity between summary judgment motion based on non-movant's allegations and 12(b)(6) motion); *see also Mitchell v. Randolph*, 215 F.3d 753, 756 (7th Cir. 2000) (treating motion for summary judgment like a 12(c) motion on the pleadings under unique circumstances). Accordingly, Trustee's motion was not procedurally defective.

### C.    *Debtor's Alleged Fiduciary Duty*

In his response to Trustee's motion, Booker argues that a fiduciary relationship existed between him and Debtor. Due to Debtor's exploitation of this relationship, Booker claims he may

---

[6]Booker correctly observes that certain of Trustee's factual allegations contain rhetoric or legal conclusions, and for that reason we do not consider those statements. (Trustee St. of Facts ¶¶ 12, 13, 15; Booker Resp. to Trustee St. of Facts ¶¶ 12, 13, 15.)

be able to rescind the transaction as voidable under public policy, or perhaps because laches could not apply under the circumstances. (Booker Initial Br. at 11-12; Booker Reply at 9-10; Booker Mem. Opp. Mot. for Summ. J. at 10-11.) *See e.g., Staude v. Heinlein*, 414 Ill. 11, 17-21, 110 N.E.2d 228, 231-233 (Ill. 1953) (observing that, depending on existence of fiduciary relationship and other factors, grantor may set aside deed where fiduciary cannot justify transaction); *Kurtz v. Solomon*, 275 Ill. App. 3d 643, 656 N.E.2d 184, 192 (1st Dist. 1995) (concluding that laches period on claim against fiduciary does not begin to run until party actually discovers fraud) (*quoting Prueter v. Bork*, 105 Ill. App. 3d 1003, 435 N.E.2d 109, 113 (1st Dist. 1981)). Booker faults the Bankruptcy Court for failing to consider the "existence and impact of the fiduciary duties" owed by Debtor and to permit further discovery on this issue. (Booker Initial Br. at 11-12.)

As discussed earlier, Booker is neither entitled to discovery, nor required it to withstand summary judgment. Indeed, he possesses significant personal knowledge on this point. Booker could have raised a genuine issue of material fact by presenting an affidavit and/or other documentation (ie. invoices, memoranda, correspondence) demonstrating Debtor's alleged position as his accountant. However, he neglected to present *any* evidence describing their purported relationship. His pleadings – both in state court and the adversary proceeding – do not allege or even suggest any fiduciary duty owed by Debtor. Because the record before us (as before the Bankruptcy Court) contains only speculation and legal argument on this issue, without any evidentiary support, Booker has not shown a genuine issue of material fact about Debtor's fiduciary role.

### D. Laches

Having evaluated these preliminary matters, we reach the merits of the summary judgment motion.[7] Trustee alleges that Booker's claim fails because: (1) it is barred by laches; and (2) rescission could not restore the *status quo ante*. Booker argues that rescission is an appropriate

---

[7]Like the Bankruptcy Court, we rely on the evidence submitted to date and cannot speculate what the parties might have presented had they conducted discovery. *In re Envirodyne Indus., Inc.*, 214 B.R. at 347.

remedy and, moreover, that a genuine issue of material fact exists regarding when he learned of Debtor's fraud.

In Illinois, "time is clearly of the essence" for an individual seeking rescission of a contract due to fraud. *Swartz v. Schaub*, 826 F. Supp. 274, 277 (N.D. Ill. 1993); *see Kanter v. Ksander*, 344 Ill. 408, 415, 176 N.E. 289, 291 (Ill. 1931); *Mrotzek v. Gitcho*, 158 Ill. App. 3d 15, 510 N.E.2d 1253, 1254-1255 (5th Dist. 1987); *Schoenbrod v. Rosenthal*, 36 Ill. App. 2d 112, 183 N.E.2d 188, 192 (1st Dist. 1962). The Illinois Supreme Court has stated that "where a party desires to rescind for fraud 'he must, upon the discovery of the facts, at once announce his purpose and . . . commence proceedings for relief as soon as reasonably possible.'" *Mrotzek*, 510 N.E.2d at 1254 (*quoting Halla v. Chicago Title & Trust Co.*, 412 Ill. 39, 48-49, 104 N.E.2d 790, 795 (Ill. 1952)); *see also Kanter*, 176 N.E. at 415 (party seeking to rescind "must make his election to do so promptly after learning of the fraud").

Laches generally bars an action only where the defendant demonstrates both a lack of diligence by the claimant and resulting prejudice. *See Jameson Realty Group v. Kostiner*, 351 Ill. App. 3d 416, 431-432, 813 N.E.2d 1124, 1137 (1st Dist. 2004); *Mrotzek,* 510 N.E.2d at 1254; *Schoenbrod*, 183 N.E.2d at 192. In cases involving fraud, however, "far greater emphasis is placed on the delay in asserting the claim than on a change of circumstances, for an unreasonable lapse of time between discovering the supposed fraud and bringing the suit is of itself prejudicial to the party charged with fraud." *Schoenbrod*, 183 N.E.2d at 192; *see Swartz,* 826 F. Supp. at 277; *Mrotzek,* 510 N.E.2d at 1254. Illinois courts focus on the reasonableness of the delay because "an unexplained delay raises an immediate doubt as to a [party's] right to ask the intervention of a court of equity." *Schoenbrod*, 183 N.E.2d at 192; *Swartz,* 826 F. Supp. at 277; *Mrotzek,* 510 N.E.2d at 1254; *see also Guy v. Duff & Phelps, Inc.*, 628 F. Supp. 252, 261-262 (N.D. Ill. 1985); *Kanter*, 176 N.E. at 415. When a party does not "move with alacrity in seeking redress . . . his claim and his motives are suspect." *Schoenbrod*, 183 N.E.2d at 192.

Thus, the question posed by the present appeal is whether the delay between Booker's

discovery of the facts supporting his fraud claim and the filing of his lawsuit is reasonable. Contrary to Booker's contention, there is no genuine issue of material fact concerning the timing of relevant events. On or about June 27, 2000, Booker learned that Debtor's $100,000 check bounced. On April 11, 2003, Debtor's $200,000 checked was also returned for insufficient funds.[8] At some point – and the record does not reflect when – Booker hired Atkins to investigate Debtor.[9] Booker filed a lawsuit alleging fraud on July 24, 2003. He claims, without support, that he first suspected Debtor after the second bounced check, hired Atkins thereafter and based his lawsuit on the information she uncovered. (Booker Mem. Opp. Mot. for Summ. J. at 5; Booker Initial Br. at 6-7; Booker Reply at 6.)

Unfortunately for Booker, he fails to demonstrate why the June 2000 bounced check did not lead to the prompt filing of a lawsuit. He claims that he became suspicious of Debtor only after the second bounced check. But he offers no explanation why an earlier bounced check – representing the very first payment on the alleged oral contract – would not similarly raise an eyebrow. The record reflects only that he excused the first non-payment but was unwilling to overlook a second. He does not explain why he neglected to launch an investigation after the 2000 bounced check, which provided as much notice of potential fraud as the 2003 bounced check. While Booker may argue that it was not a single bounced check but the developing pattern of non-payment that warranted investigation, Illinois law requires greater diligence. As soon as he discovered facts suggesting fraud (here, the initial bounced check), he was obligated to take action. *See Swartz*, 826 F. Supp. at 277; *Kanter*, 176 N.E. at 415; *Mrotzek*, 510 N.E.2d at 1254. Instead, Booker looked the other way after the 2000 non-payment and did not file suit for over three years. Because Booker failed to enforce his rights in a timely fashion despite having notice of Debtor's fraud, his rescission

---

[8]The parties did not submit evidence regarding other payments Debtor did or did not deliver, including the $900,000 installment due in 2000.

[9]Booker alleges that he discovered the facts suggesting fraud only after the second bounced check in 2003 and Atkins' investigation. As stated earlier, the Atkins affidavit does not support this claim. *See supra* n.5.

claim cannot prevail. Accordingly, we affirm the Bankruptcy Court's grant of summary judgment in favor of Trustee.[10]

## IV. CONCLUSION

For the reasons set forth above, we hereby affirm the decision of the Bankruptcy Court granting the Trustee's motion for summary judgment. It is so ordered.

> Honorable Marvin E. Aspen
> U.S. District Court Judge

Dated: May 11, 2006

_____

[10]Because we conclude that Booker's rescission claim is untimely, we need not address Trustee's alternative argument that rescission could not restore the *status quo ante*.